Judge Owsley
delivered the opinion of the court.
The appellees having obtained the legal title to 500 acres of land entered, surveyed and patented in the name of Daniel Tebbs, the appellants asserting their superior equity through their ancestor, Andrew Steele, deceased, as the locator of the land, exhibited their bill in the circuit court of Fayette, for the purpose of obtaining a conveyance for one moiety of the land. They charge, that under the custom prevailing in the country when the location was made, their ancestor was entitled to one moiety for his services in making the entry, &c.; and moreover alledge, that under, a contract with a certain Matthew Walker, who was authorised by Tebbs to procure the location of the warrant, their ancestor undertook to locate the warrant, and was to have, for his services, one half the land.
The appellees deny that Walker was ever employed by Tebbs to locate, or cause the warrant to be located. They alledge that a certain William Farrow being indebted to Tebbs, undertook to cause the location of the warrants for *188 a pecuniary consideration only; and Farrow then residing in the eastern part of Virginia, inclosed the warrant to his brother Thornton, then in the district of Kentucky, for location; and that his brother having left the western waters, Walker, without any authority either from Tebbs or Farrow, obtained possession of the warrant, and procured Steele to make the location. They deny that the contract with Walker, or the custom of the country, conferred upon Steele or his representatives an equity to any part of the land.
The deposition of a witness taken after his interest is released, is subject to great exceptions as to credit (tho' it is competent) if whilst he had a subsisting interest he had deposed on the same subject.
The circuit court decreed the appellants’ bill to be dismissed, from which they have appealed to this court.
The record contains a written agreement between Steele and Walker, whereby the latter, in consideration alone of the services to be performed by the former in locating the warrant of Tebbs, stipulated that he would either make to Steele, or cause Tebbs to make, a conveyance to one moiety of the land secured; and from the proof in the cause, there is no doubt but the land in contest was secured by the services of Steele, in locating the warrant under the agreement with Walker.
If, therefore, Walker were authorised by Tebbs; to procure the location of the warrant, upon the terms agreed on between him and Steele, there could be no serious question as to the appellants’ right to relief. But upon an attentive examination of the record, we are unable to perceive any thing from which such an authority in Walker can be rationally inferred. The only evidence conducing to prove Walker was authorised by Tebbs to procure the location of the warrant, is contained in Walker’s deposition, which appears to have been objected to, on the hearing in the circuit court, on the ground of interest.
Under the agreement between Walker and Steele, it is perfectly clear that Walker, in case Steele fails to procure a moiety of the land, is liable to compensate him in damages. Walker, therefore, must be interested in the decision of the present contest, unless, as is contended, his interest has been released by Steele. Such a release is not, however, exhibited in the cause; but from the circumstance of the clerk’s office of Fayette, where it would most probably have been filed, having been consumed by fire, taken in connection with the parol evidence as to the release, we are inclined to think that Walker must have been released by Steele before the deposition, exhibited in the present cause, was taken.
A person locating lands isnotentitled to a specific int’rest therein by custom —to give a lien on the lands to the locator, there must be a contract to that effect with the owner of the warrant or his agents-. Vide 1 Marshall, 402, Watkins' h’s. vs. Eastin, ac.
But although the deposition of Walker may be admissible, it certainly assumes the aspect of having been given under circumstances of great bias. His deposition appears to have been previously taken, and whilst he was materially and essentially interested; and although that circumstance might not preclude the party from afterwards giving a release and again taking this deposition, it was eminently calculated to incline the mind to support what had been previously proven, and should consequently detract greatly from the credibility of the evidence.
But if relief could be decreed under any circumstances upon evidence thus taken, we are fully convinced, that when considered in connection with the opposing evidence, the deposition of Walker cannot form sufficient grounds for a decree in favor of the appellants. The evidence is perfectly clear, that Walker did not procure the warrant from Tebbs, but that he obtained it from Masterson, to whose hands it had come inclosed in a letter written by William Farrow to his brother Thornton. But Walker swears that some time after he got possession of the warrant, he went to the old country, saw Tebbs, and was requested by him to do the best he could with it; and that he accordingly employed Steele to make the location. It is obvious, however, from other evidence, that Walker never could have had a conversation with Tebbs after he procured the warrant. Tebbs is proven not to have been in the western country:—Walker had previously removed his family to the district of Kentucky—and he is proven not to have returned (as he states) to the old country after the removal of his family.
We are of opinion, therefore, that the evidence fails to establish an authority in Walker to make the contract with Steele, and consequently his representatives have failed to shew themselves entitled to an equity in the land, unless, as is contended, it can be deduced under the custom of the country.
From what has already been said if will be perceived, that Walker obtained the warrant under no contract. He is proven to have obtained it from Masterson, declaring he was the friend of Tebbs and Farrow, and would have it located. Having thus taken the warrant and volunteered his services, he may be entitled to a pecuniary compensation; but as was held in the case of Barnett vs. Bell, 4th Bibb, 447, neither he nor Steele can have gained under the *190 custom of the country an equity to any part of the land.
Pope and Wickliffe for appellants, Haggin and Littell for appellees.
The decree must, therefore, be affirmed with cost.